IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LSB CHEMICAL, L.L.C., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ |
| ALABAMA PAINTING, INC., | ) ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiff, LSB Chemical, L.L.C. ("LSB"), for its Complaint against the Defendant, Alabama Painting, Inc. ("Alabama Painting"), alleges and states as follows:

**INTRODUCTION**

1. LSB manufactures chemicals, including ammonia and ammonia-related products vital to the United States agricultural market. Alabama Painting is a contractor LSB hired to perform needed services at LSB's plants.

2. This lawsuit stems from an incident on March 10, 2024, at LSB's plant in Cherokee, Alabama (the "Cherokee Facility"). While performing work at the Cherokee Facility, an Alabama Painting employee negligently and recklessly drove a vacuum truck owned by Alabama Painting into and through the facility with its trailer in an elevated position.

1



3.      The Alabama Painting driver's negligent and reckless actions caused the trailer to strike an overhead pipe rack and damage multiple piping runs and a live natural gas line. LSB was forced to perform an emergency shutdown of its entire Cherokee Facility. LSB incurred repair costs in excess of $560,000, utility and internal labor costs exceeding $200,000, and business interruption losses exceeding $2.8 million. Both LSB and Alabama Painting were lucky no lives were lost that day.

4.      LSB and Alabama Painting have an agreement that governs the services provided to LSB by Alabama Painting. The Master-Work Agreement for Construction or Field Services (the "Agreement") determines the initiation of services, the manner in which Alabama Painting's services are to be performed, the obligations of Alabama Painting when performing services at the contracted facilities, and the liability of the parties should

one of them breach the Agreement. *See* Agreement, attached hereto as **Exhibit 1**. When LSB needed work performed, it would issue Purchase Orders under the Agreement to define the scope of work. Alabama Painting was operating under a Purchase Order and the Agreement when the event at the Cherokee Facility occurred.

5.     Alabama Painting's failures to abide by the Cherokee Facility's safety policies, comply with the terms of the Agreement, and exercise reasonable care on March 10, 2024, and its refusal to compensate LSB for the damages it caused, constitute both negligence and a breach of the Agreement. Further, the actions of Alabama Painting's driver went beyond mere negligence – driving the truck with its trailer in an elevated position through an ammonia plant was reckless and endangered lives.

## PARTIES

6.     LSB is an Oklahoma limited liability company formed under Oklahoma law with its principal office located at 3503 NW 63rd Street, Suite 500, Oklahoma City, Oklahoma, 73116. The sole member of LSB, LSB Industries, Inc., is a Delaware corporation.

7.     Alabama Painting is an Alabama corporation whose corporate headquarters is located at 3021 Central Avenue, Muscle Shoals, AL 35661.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, and a complete diversity of citizenship between the parties exists. LSB is a citizen of Delaware; Alabama Painting is a citizen of Alabama.

9. This Court has personal jurisdiction over Alabama Painting because it has consented to jurisdiction in the Western District of Oklahoma. In the Agreement between the parties, LSB and Alabama Painting agreed:

> Each of the parties irrevocably and unconditionally: (a) agrees that any lawsuit arising out of or relating to [the] Agreement shall be filed in the United States District Court for the Western District of Oklahoma . . . [and] (c) consents and submits to personal jurisdiction in the referenced federal court . . .

[Exhibit 1, ¶ 31].

10. The claims asserted herein arise out of the negligent actions of Alabama Painting while providing services to LSB pursuant to the Agreement between the parties.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Alabama Painting has consented to venue in the Agreement:

> Each of the parties . . . (b) consents and submits, in any such lawsuit, to the exclusive jurisdiction of the referenced federal court . . . (d) waives any objection that it may have to venue of any such lawsuit laying in the referenced federal court . . . and (e) waives any claim or defense of inconvenient forum.

[Exhibit 1, ¶ 31].

12. Alabama Painting and LSB also agreed that the Agreement must "be construed, interpreted and enforced under the laws of the State of Oklahoma." [Exhibit 1, ¶ 31].

## FACTUAL BACKGROUND

13. LSB and Alabama Painting are parties to the Agreement. [*See* Exhibit 1].

14. The Agreement has a perpetual term and may be terminated only upon written notice by one party to the other subject to appropriate compensation as stated therein. [Exhibit 1, ¶¶ 13, 14].

15. Under the Agreement, Alabama Painting agreed to perform and LSB agreed to pay Alabama Painting for "work, construction or services" ("Work") performed from time to time at LSB's facilities pursuant to the terms and conditions as stated therein. [Exhibit 1].

16. All Work must be described in a Purchase Order and is binding on LSB and Alabama Painting once accepted by Alabama Painting. [Exhibit 1, ¶ 2].

17. It was Alabama Painting's responsibility to provide all necessary labor and

materials required to complete the Work under a Purchase Order. [Exhibit 1, ¶¶ 1,3].

18. In the Agreement, Alabama Painting warranted that all Work by Alabama Painting "under a Purchase Order shall be performed in a good, safe, and workmanlike manner in conformity with the highest industry standards, methods, and practices," and agrees not to interfere with the operations of LSB's Facility. [Exhibit 1, ¶¶ 8, 10].

19. Should Alabama Painting's actions not conform to those required under the Agreement, it is required to "take all action necessary or as requested by [LSB] to affect the purposes of" the provision. [Exhibit 1, ¶ 8].

20. Alabama Painting agreed that if "it or its subcontractors interfere with the operation of the Facility that Company **will** suffer direct and consequential damages including, but not limited to, lost profits on collateral transactions, lost opportunities, escalating material and energy costs and unabsorbed overhead." [Exhibit 1, ¶ 8 (emphasis added)].

21. On March 10, 2024, Alabama Painting was conducting Work at the Cherokee Facility under a Purchase Order from LSB. The Work Alabama Painting was performing for LSB at the time of the incident required Alabama Painting to use an industrial vacuum truck.

22.  The standard and prudent policy for operating vacuum trucks is to first inspect the truck and operate it in teams. Operating the truck in teams is especially important when emptying the truck, so a spotter can ensure proper procedures—like lowering the trailer before driving—are followed. However, the Alabama Painting driver did not inspect the truck or wait on his team.

23.  After the Alabama Painting foreman emptied the vacuum truck on his own, outside the fenced-in area of the Cherokee Facility, he failed to lower the truck tank before returning to the fenced-in area of the Cherokee Facility where the critical plant operations occur.

24.  As a result of Alabama Painting's failure to lower the truck's trailer, the trailer struck overhead piping inside the Cherokee Facility as the driver operated the vehicle.

25.  The impact of the trailer with the overhead piping damaged multiple piping runs and broke a fitting off a live natural gas line.

26.  The damage to the overhead piping structure resulted in a significant gas release and rendered the natural gas line unusable, which led to an emergency shut down of the Cherokee Facility for approximately ten days. Natural gas is the critical raw material used in the manufacturing process of $NH_3$. The Cherokee Facility, which is an $NH_3$ plant, is not operational without natural gas.

27. While the Cherokee Facility was shut down and being started back up, LSB made necessary repairs to the damaged overhead piping structure and related equipment within the Cherokee Facility totaling $564,291.59.

28. As a result of the Cherokee Facility being shut down, LSB incurred $145,000 in natural gas charges for steam and start-up, internal labor costs of $58,000, and business income loss of at least $2,828,000.

29. The total amount of LSB's damages is at least $3,595,291.59.

30. Consistent with the Agreement and the duties undertaken by Alabama Painting in its Work, Alabama Painting is liable to LSB for the costs incurred following the incident at Cherokee Facility on March 10, 2024.

## COUNT I: NEGLIGENCE

31. LSB realleges and includes by reference all preceding paragraphs as if fully set forth herein.

32. Alabama Painting owed LSB a duty to exercise reasonable care and caution while performing Work at the Cherokee Facility, so as to not harm the Facility or its

processes.

33. Alabama Painting breached this duty when its driver drove through the Cherokee Facility in a reckless and negligent manner by leaving the trailer of the vacuum truck in an elevated position while driving through the Cherokee Facility.

34. As a direct and proximate cause of Alabama Painting's negligence, LSB's Cherokee Facility suffered damage to multiple piping runs and a broken fitting off a live natural gas line.

35. As a further direct and proximate result of Alabama Painting's negligence, LSB was forced to conduct an emergency shutdown of the Cherokee Facility – a shutdown that lasted for 10 days – which caused LSB to lose significant profits. As a result of Alabama Painting's negligent injury to LSB's property, LSB has suffered damages of no less than $3,595,291.59, including $564,291.59 for repair costs, $145,000 for steam and start-up charges, $58,000 for internal labor costs, and $2,828,000 in business income loss.

## COUNT II: BREACH OF CONTRACT

36. LSB realleges and includes by reference all preceding paragraphs as if fully set forth herein.

4928-8651-3251, v. 6

37. In the Agreement, Alabama Painting expressly agreed, in pertinent part, to the following provisions:

> "¶8. NONINTERFERENCE WITH FACITY. All Work by Contractor under a Purchase Order shall be done in such a manner as not to interfere with the operations of the Facility . . . . Contractor expressly acknowledges that should it or its subcontractors interfere with the operation of the Facility that Company will suffer direct and consequential damages including, but not limited to, lost profits on collateral transactions, lost opportunities, escalating material and energy costs and unabsorbed overhead."
>
> "¶10. WARRANTIES. Contractor warrants (i) that the Work under a Purchase Order shall be performed in a good, safe and workmanlike manner in conformity with the highest industry standards, methods and practices . . . ."
>
> "¶11. REMEDY OF DEFICIENCIES, DAMAGE AND LOSS. Contractor shall at its sole cost correct, replace, repair or otherwise remedy, all as directed by Company, (i) any Work under a Purchase Order or materials and equipment incorporated into the Work under a Purchase Order that is not as warranted in Paragraph 10 and any resulting damage and/or required corrective work caused thereby . . . Contractor's obligations under this Paragraph are in addition to and not in lieu of any remedy at law or in equity othe1wise available to Company under this Agreement, or a Purchase Order, including, but not limited to, all losses, and damages (consequential or otherwise) arising from breach of the Agreement. Contractor's obligations and potential liabilities are expressly agreed and understood not to be limited by any insurance maintained or required to be maintained by Contractor. Contractor's warranties in Paragraph 10 and Company's remedies in this Paragraph 11 are not a limitation of, but in addition to any and all rights and remedies under this Agreement, at law or in equity."
>
> "¶15. DEFENSE, INDEMNITY, HOLD HARMLESS. (a) Contractor agrees to indemnify, to defend, and to hold Company free and harmless from and against any and all . . . losses (including attorney

>  fees), damages, . . . property damages, contamination or adverse effects on the environment, fines, penalties and expenses directly or indirectly arising out of, incident to, resulting from, or in any way associated with: (i) the Work under a Purchase Order by Contractor . . ., (ii) any operation or activity by Contractor . . . related to or connected with this Agreement, the Work or a Purchase Order, (iii) any failure by Contractor . . . to comply with the requirements of this Agreement or of a Purchase Order, (iv) an act or omission by Contractor . . . (vi) any violation of federal, state or local law, regulation, rule or ordinance pertaining to this Agreement, the Work or a Purchase Order by Contractor or its subcontractor or (vii) this Agreement, the Work or a Purchase Order; . . . ."

[Exhibit 1, ¶¶ 8, 10-11, 15].

38.  The Agreement is a valid, enforceable, binding contract supported by consideration.

39.  LSB fully performed all obligations under the terms of the Agreement.

40.  Alabama Painting's actions and omissions on March 10, 2024— striking overhead piping while driving a truck through the Cherokee Facility with the trailer raised—were inconsistent with its obligations under the Agreement.

41.  Alabama's failure to pay the damages LSB incurred as a result of Alabama's actions and omissions are also inconsistent with the obligations under the Agreement.

42. Alabama Painting breached the Agreement by (1) failing to perform its work at the Cherokee Facility in a good, safe and workmanlike manner in conformity with the highest industry standard, (2) interfering with the operations of the Cherokee Facility, and (3) failing to pay, indemnify, and hold LSB harmless for the damages and losses it incurred as a result of Alabama Painting's actions and omissions.

43. As a result of Alabama Painting's breach of the Agreement, LSB has sustained damages in an amount no less than $3,595,291.59, plus interest at the applicable rate, plus attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, LSB respectfully requests a judgment in its favor against Alabama Painting on all its claims awarding LSB: (1) all damages caused by Alabama Painting in an amount not less than $3,595,291.59, with interest at the maximum rate allowed by law, (2) all the costs and attorney fees it incurs to resolve this dispute pursuant to the parties' Agreement and 12 O.S. § 940, and (3) such other relief as this Court deems just and proper at law or in equity. Jury Trial requested.

Respectfully submitted,

_____
Brooks A. Richardson, OBA No. 18133
Cole T. McDaniel, OBA No. 35677
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan, Suite 2200
Oklahoma City, OK 73102
Telephone: 405-235-5500
Facsimile: 405-235-2875
BRichardson@gablelaw.com

***Attorneys for Plaintiff
LSB Chemical, L.L.C.***